IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Melissa Tomeki Evette Joyner, | ) | Civil Action No.  8:13-cv-02988-TMC-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28
U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action
pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision
of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for
disability insurance benefits ("DIB").[2]  For the reasons set forth below, it is recommended
that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

On February 13, 2011, Plaintiff filed an application for DIB, alleging disability
beginning October 1, 2010.  [R. 125–32.]  The claim was denied initially and upon
reconsideration by the Social Security Administration ("the Administration").  [R. 67–68.]

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social
Security after a hearing under paragraph (1) shall be subject to judicial review as provided
in section 405(g) of this title to the same extent as the Commissioner's final determinations
under section 405 of this title."  42 U.S.C. § 1383(c)(3).

Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on March 20, 2012, Plaintiff appeared and testified before ALJ Maria C. Northingham, in Augusta, Georgia. [R. 29–66.] Plaintiff was informed of her right to representation and chose to appear and testify without the assistance of an attorney or other representative. [R. 32, 124.]

On August 3, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. [R. 9–23.] At Step 1,[3] the ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on December 31, 2014, and had not engaged in substantial gainful activity since October 1, 2010, the alleged onset date. [R. 11, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the severe impairment of mild lumbar disc bulge. [R. 11, Finding 3.] The ALJ also found Plaintiff had non-medically determinable impairments of hand pain and carpal tunnel syndrome.[4] [R. 12.] Further, the ALJ found Plaintiff's mild right knee arthritis was a non-severe impairment. [R. 12, Finding 4.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 12, Finding 5.] The ALJ specifically considered Listing 1.04. [R. 12.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra.*

[4]The ALJ gave Plaintiff the benefit of the doubt regarding this condition and accommodated the residual functional capacity assessment based on the claimant's subjective complaints. [R. 12.]

> The claimant is capable of performing a wide range of individual is limited to light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the DOT and regulations, as well as, lift and/or carry 10 pounds frequently. The claimant can also do sedentary work as defined in the DOT and regulations. She has no limitations for sitting in an 8-hour workday. She is capable of standing and/or walking for up to 6 hours in an 8-hour workday. She is able to perform occasional postural functions of climbing ramps or stairs, balancing, kneeling, crouching, and stooping. She can do work that does not require crawling and no climbing of ladders, ropes, or scaffolds. In the course of work, she can do work that permits her with the opportunity to optionally alternate positions from sitting to standing, but such would not cause her to be off tasks. She is capable of performing no constant, fine, bilateral manipulations, but gross handling is unlimited. The claimant is able to perform sustained work activity on a regular and continuous basis for 8 hours per day, 40 hours per week with normal breaks being sufficient.

[R. 12–13, Finding 6.]   Based on this RFC, at Step 4, the ALJ determined Plaintiff was capable of performing her past relevant work as a cashier.  [R. 20, Finding 7.]  In the alternative, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs in  significant numbers in the national economy that the Plaintiff could perform.  [R. 21.]  Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from October 1, 2010, through the date of the decision.  [R. 22, Finding 8.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Council declined review.  [R. 1–3.]  Plaintiff, acting pro se, filed this action for judicial review on November 1, 2013 pursuant to 42 U.S.C. § 405(g).  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff, proceeding pro se, argues she is not able to work as a result of the pain she experiences from pinched nerves in her back and neck.  [Doc. 30 at 1.]  Plaintiff contends that she is a single mother of three who has worked two jobs at times to provide for her family.  [*Id.*]  Plaintiff states she has seen numerous doctors, has had injections in her neck and back that have not relieved her pain, and has been on ten different prescriptions for pain which cause her to sleep for long periods of time.  [*Id.* at 2.]  Plaintiff also states she has to pay for treatment out of pocket and does not have the finances to continue paying. [*Id.* at 2–3.]

The Commissioner argues the ALJ's decision is supported by substantial evidence and that the ALJ did not err in finding Plaintiff's allegation that her pain is disabling was not fully credible.  [Doc. 32 at 3–9.]

## STANDARD OF REVIEW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the

4

plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Court's Scope of Review in Social Security Actions**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the

5

Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was

6

appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).   On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.   *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").   After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.   *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).   A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

**I.     The Five Step Evaluation**

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden

9

shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not

fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.    *Other Work*

---

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).    To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).    When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931.    In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.    20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.   Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is

unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527©.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making

14

the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds

that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

16

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

17

advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Credibility With Respect to Pain Complaints**

Plaintiff filed a three-page, typed brief in this action but did not cite any specific objections to or error in the ALJ's decision.  [*See* Doc. 30.]  Because Plaintiff is proceeding pro se, however, the Court is charged with liberally construing Plaintiff's brief to allow for the development of a potentially meritorious claim.  *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that the mandated liberal construction of pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so").  Accordingly, the Court construes Plaintiff's brief as a challenge to the ALJ's credibility findings with respect to the severity of her pain and the limitations it causes.  The Commissioner argues the ALJ's credibility finding was supported by substantial evidence. The Court agrees that there is substantial evidence to affirm the ALJ's finding.

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record.  SSR 96-7p, 61 Fed. Reg. at 1.  The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual

and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "should refer specifically to the evidence informing the ALJ's conclusions").

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

### ALJ's Credibility Finding

In making her credibility determination, the ALJ explained,

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The undersigned has duly considered the testimony by the claimant and her aunt regarding the severity of her conditions. However, the undersigned notes that various alleged activities

are inconsistent with the conclusion that the claimant cannot work because of her conditions, as the claimant's activities were consistent with the conclusion that the claimant retained a significant portion of her functionality regarding her abilities to stand and walk as evident by her enrollment and participation in the culinary arts program and as follows. She reported that she washed clothes for three hours and for four times a week, she prepared meals that were "quick meals," and was capable of attending physical therapy for twice a week (Exhibit 2E). Furthermore, she testified that she swept twice a week and dusted and cooked for approximately three times a week, which is consistent with the conclusion that she retained a significant portion of her functionality regarding her abilities to stand and walk. The claimant testified that she drives daily, is in a carpool for her children every other week and her average time on the road is 3-4 hours daily, which is inconsistent with a preclusion of all work. The undersigned also notes that the claimant's ability to spend three to four hours a week with schoolwork and maintain a 3.0 grade point average, while taking care of three children and driving them to school regularly, is consistent with the conclusion that the claimant retained a significant portion of her functionality.

Additionally, the undersigned notes that the medical evidence record is consistent with the conclusion that the claimant retained a significant portion of her functionality, regarding her abilities to sit, stand, and walk for prolonged periods.

The claimant has been has been diagnosed with lower back pain and left leg pain with parenthesis, myofascial pain syndrome, and a history of left leg swelling from her treating physician, which is consistent with the conclusion that she experiences conditions that reduces from full capacity, her abilities to sit, stand, walk, and exert force, but these are accommodated fro in the above-determined residual functional capacity (RFC). She has also exhibited clinical signs that are consistent with this conclusion. During a consultative examination, she has exhibited a decreased range of motion in the left shoulder with abduction and forward elevation, decreased flexion at the waist, and positive straight leg-raising results on the left at 45 degrees and at 60 degrees on the right (Exhibits 5F and 10F). Furthermore, she has been recommended to take physical therapy to help increase her functionality (Exhibit 4F/18).

However, the evidence is consistent with the conclusion that she has retained a significant portion of her functionality, as the evidence supports the conclusion that she retained most of her abilities to sit, stand, and walk. The evidence of one MRI only showed "mild" bulging annulus fibrosis at the L4/L5 and L5/S1, which is consistent with the conclusion that the claimant retained a significant portion of her functionality. Furthermore, the evidence from other diagnostic examinations were consistent with the conclusion that she retained most of her functionality, as a two subsequent MRIs showed "normal" results, including "no significant spinal canal or neural foraminal narrowing" and an EMG study also returned "normal" results (Exhibits 1F5-6, 7, 4F/5-6, and 9F). Furthermore, various clinical signs by her treating physician were consistent with the conclusion that she retained a significant amount of her functionality, regarding her abilities to sit, stand, and walk. Her physician concluded that she retained a strength that was a rating of 5/5 in all 4 limbs, intact sensation to pin prick and light touch, a steady gait, no spine tenderness, and a negative straight leg raising result (Exhibit 1F/4). As this evidence, and the aforementioned evidence, is consistent with the conclusion that she retained a significant portion of her functionality, the undersigned finds that the evidence is consistent with the conclusion that the claimant is not fully credible regarding her allegations.

The undersigned also carefully observed the claimant and notes that the claimant was not in any obvious pain or discomfort during the course of the hearing. In addition, the claimant lacked the general physical appearance of a person who might have been experiencing prolonged or severe pain. Pursuant to Social Security Regulations and Social Security Ruling 96-7p and in accordance with § 404. 15290(c)(4), pain cannot be found to have a significant effect on a disability determination or decision unless medical signs or laboratory findings show that a medically determinable physical or mental impairment is present that could reasonably be expected to produce the pain alleged. When medical signs and laboratory findings do not substantiate any physical impairment capable of producing the alleged pain, as is the case in the instant matter, and other symptoms (and a favorable determination cannot be made on the basis of the total record), the possibility of a mental impairment as the basis for the pain should be investigated. The record supports that the claimant has no

mental impairments and, thus, this is not supportive of being a causal factor regarding pain.

The undersigned concludes that the claimant's subjective pain complaints are not fully credible and the record supports this inconsistency of subjective complaints versus objective findings on examination as comprehensively discuss in the body of this decision. The objective findings on examination support the conclusion that the claimant experienced good motor strength, intact neurological findings and no evidence of atrophy (Exhibit 13F). In sum, the above residual functional capacity assessment is supported by the totality of the evidence as comprehensively described above. It is evident from the record that the claimant is capable of performing work related activities as consistent with the above-established residual functional capacity with latitude afforded by the undersigned to do light and sedentary work as inclusive within this RFC. Although the claimant's subjective complaints may have some merit, the totality oft he supporting medical evidence does not provide clinical correlation of his symptomology to the degree of debility alleged with objective findings on examination. Consequently, there is no legally supportable basis for disability and preclusion of all work activity as within the meaning of the regulations.

[R. 16–18.]

### *Discussion*

In light of the evidence before the ALJ at the time of the hearing, the Court concludes that the ALJ conducted the proper credibility analysis and cited substantial evidence to support her finding that Plaintiff's subjective complaints were not entirely credible. The ALJ expressly evaluated Plaintiff's pain complaints in accordance with the two-step process outlined in *Craig* [R. 13–15], and also considered the relevant factors as outlined in 20 C.F.R. § 404.1529(c)(3) [R. 13–20].

The ALJ discussed the treatment notes of Plaintiff's treating physician, Mohammed I. Alhatou[8] ("Dr. Alhatou"). [R. 15, 235–49.] Dr. Alhatou specifically noted that Plaintiff exhibited normal tone and bulk, a strength rating of 5/5 in all four limbs, intact sensation to pin prick and light touch, a steady gait, no spine tenderness, a negative straight leg raising result, "moderate" back pain rated as 5/10 in intensity, and pain and numbness in her left leg. [R. 15–16, 238–40.] The ALJ determined that Plaintiff's clinical signs were consistent with the conclusion that she retained a significant portion of her functionality. [R. 15.] The ALJ also noted that Plaintiff's EMG study and an MRI of her lumbar spine returned normal results. [R. 16, 238–39.]

The ALJ also considered that Dr. Monnieque Singleton ("Dr. Singleton"), on consultative exam, found Plaintiff exhibited decreased range of motion in the left shoulder with abduction and forward elevation, decreased flexion at the waist, and had positive straight leg-raising results on the left at 45 degrees and on the right at 60 degrees. [R. 16, 338–39.] However, Dr. Singleton also observed that Plaintiff had a "full range of motion" in both of her elbows, wrists, and hands, normal extension and lateral flexion of the waist, a full range of motion of the hips, a full range of motion in the ankles, ambulated without assistance, exhibited no signs of pedal edema, and showed signs of intact pedal edema. [R. 16, 339, 345.] Accordingly, the ALJ concluded that the clinical signs identified on exam were consistent with the conclusion Plaintiff retained a significant portion of her functionality. [R. 16.]

---

[8]The ALJ's decision refers to Dr. ABU-ATA, however, review of the record clarifies that his name is Alhatou. [R. 18, 235–49.] Accordingly, the Court will refer to him as Dr. Alhatou.

Additionally, the ALJ considered Plaintiff's activities of daily living in assessing her credibility. The ALJ noted Plaintiff's testimony that she swept twice a week, dusted, cooked approximately three times a week, drove daily, was in a carpool for her children every other week, and her average time on the road was 3–4 hours daily. [R. 16–17.] The ALJ concluded Plaintiff's testimony was consistent with the conclusion that Plaintiff retained a significant portion of her functionality regarding her abilities to stand and walk and was inconsistent with a preclusion of all work. [R. 17.] The ALJ also noted that the claimant's ability to spend three to four hours a week with schoolwork and maintain a 3.0 grade point average, while taking care of three children and driving them to school regularly, was consistent with the conclusion that the claimant retained a significant portion of her functionality. [*Id.*] The ALJ also discussed that Plaintiff was receiving unemployment and had to certify that she was able to work while receiving this compensation. [R. 13–14.] Based on the foregoing facts and conclusions, the ALJ concluded that Plaintiff's subjective pain complaints were not fully credible and that Plaintiff is capable of performing work related activities consistent with the RFC which includes the latitude to do light and sedentary work. [R. 18.]

Upon review, the Court finds the ALJ's decision reflects that she considered the full range of evidence including evidence of Plaintiff's testimony, complaints to providers, daily activities, and efficacy of her medication to make her conclusion regarding the severity of Plaintiff's condition and its impact on her ability to work. The ALJ found Plaintiff had a severe impairment of mild lumbar disc bulge, however, this finding does not, by itself, entitle Plaintiff to DIB. In order to obtain benefits, the evidence must show Plaintiff's impairments are of a disabling severity. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990)

24

(stating a court's proper focus is not on a claimant's diagnosis but on the claimant's actual function limitations); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (stating the mere presence of impairments does not automatically entitle a claimant to disability benefits—the claimant must show functional loss related to his or her impairments). Plaintiff does not point to any evidence of record that contradicts or undermines the ALJ's findings, but merely seeks to have the Court reweigh the evidence already considered by the ALJ.  Such an exercise is contrary to law. *Mastro*, 270 F.3d at 176.  Thus, the Court finds the ALJ's credibility analysis is supported by substantial evidence.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be AFFIRMED.

**IT IS SO RECOMMENDED**.

S/Jacquelyn D. Austin
United States Magistrate Judge

January 30, 2015
Greenville, South Carolina